OPINION
{¶ 1} Defendant-appellant John Byers appeals his conviction and sentence from the Ashland County Court of Common Pleas on one count of domestic violence. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 31, 2002, the Ashland County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. The indictment alleged that appellant previously had been convicted of domestic violence in Ashland Municipal Court Case No. 96CRB864. At his arraignment on August 7, 2002, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, a jury trial commenced on October 3, 2002. The following testimony was adduced at trial.
 {¶ 4} Heather Byers, the victim herein, is married to appellant John Byers. Heather, who has two children, ages eight and five, from another marriage, testified that on July 22, 2002, she picked appellant up at the jail[1] so that he could go to work. According to Heather, the two had argued the day before after Heather told appellant that a co-worker of hers had stopped over. Heather testified that appellant "was irate, he was screaming at me telling me he didn't want anybody in the apartment, he didn't want anybody there when he wasn't there." Transcript at 88. After picking appellant up, Heather took him back to the apartment so that appellant could shave and get ready for work. When the two arrived at the apartment, Heather and appellant "started arguing in the back bedroom about, . . . having people over, he didn't want anybody in the house while he was not there . . ." Transcript at 91. Appellant, during the argument, voiced his displeasure over the fact that Heather had let his best friend stay over. At the time, Heather's two children were in another room watching television.
 {¶ 5} At trial, Heather testified that, during the "pretty heated" argument, she told appellant "I can't take it anymore, I want a divorce, I can't take it. He's got to get a job and pay child support. My child support is taken from my kids paying for his kids, it's not fair." Transcript at 92. Appellant then "went ballistic" and began smashing things and punching a mirror. Transcript at 93. During the argument, appellant threw Heather's jewelry box at the mirror, causing the box to break apart. When appellant began throwing things, Heather proceeded to leave the bedroom. The following testimony was adduced when Heather was asked what happened next:
 {¶ 6} "A. He ran by me and threw down my three heart shelf with glass about the time I was in the dining area and he put me in a headlock, started choking me, that's when he threw me down on top of the glass and kicked me in the side.
 {¶ 7} "Q. Describe this heart-shaped stand for us.
 {¶ 8} "A. Uh, got like three — it's wood, got like bottom shelf, middle, and then the top shelf and it was heart-shaped, it's wooden.
 {¶ 9} "Q. Okay.
 {¶ 10} "A. I got — I just put knickknacks on it, little stuff on it.
 {¶ 11} "Q. There was glass on it?
 {¶ 12} "A. Yeah, it was like — I'd say like a wine glass from Arby's, the crystal gold glass, that's what was on it.
 {¶ 13} "Q. Did Mr. Byers threw [sic] the stand down?
 {¶ 14} "A. Yeah.
 {¶ 15} "Q. Or did he hit it as he brushed by?
 {¶ 16} "A. No, he threw it down.
 {¶ 17} "Q. In front of you?
 {¶ 18} "A. Yes.
 {¶ 19} "Q. Do you believe that was intended to prevent you from exiting the apartment?
 {¶ 20} "A. No, just he's broke stuff, I've broke stuff, but that's intentionally throw stuff down just to break it.
 {¶ 21} "Q. Okay. So he throws it down and breaks it, you say he put on in a headlock?
 {¶ 22} "A. Uh-huh, yes.
 {¶ 23} "Q. Describe — describe for us what occurred.
 {¶ 24} "A. He put his arm around him head like this (indicating).
 {¶ 25} "Q. Around your neck?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. Does it restrict your breathing?
 {¶ 28} "A. I could breathe, he still put me in a headlock and threw me down. I mean, enough force to throw me down.
 {¶ 29} "Q. Did he hold you —
 {¶ 30} "A. Uh-huh, yes.
 {¶ 31} "Q. — and then throw you down?
 {¶ 32} "A. Uh-huh, yes.
 {¶ 33} "Q. Did you trip?
 {¶ 34} "A. No.
 {¶ 35} "Q. Approximately how long would you say you were in the headlock before you went down?
 {¶ 36} "A. Just seemed like seconds, it happened just so quickly.
 {¶ 37} "Q. From experiencing that moment do you think he meant to throw you down?
 {¶ 38} "A. If he didn't mean to do it he wouldn't have done it in the first place." Transcript at 94-96.
While Heather was on the ground, appellant kicked her in the side hard enough to cause pain and said "there you go, bitch." Transcript at 96.
 {¶ 39} Heather then attempted to leave the apartment with her two sons. As Heather's eight year old son ran towards the door, appellant shoved him out of the way, said that "nobody's leaving" and then locked the door. Transcript at 97. When Heather and her sons were finally able to leave the apartment, they went to Heather's place of employment and Heather called the police. When Heather later went back to the apartment with two police officers, appellant was gone. However, upon her return, Heather found a note in appellant's handwriting stating "I'm sorry" and also discovered a message on her answering machine from appellant stating that "I'm so sorry for doing that to you," Transcript at 105, 106.
 {¶ 40} Jesse Cieslak, Heather's eight year old son, also testified at trial. Jesse testified that he was watching television with his younger brother when he heard a "smash" in his mother's room. Transcript at 179. When he went to his mother's room to see what was going on, Jesse heard appellant and his mother arguing loudly. Jesse then went back to his room after being instructed to do so by his mother, Heather. As he attempted to leave the apartment, Jesse saw appellant put his mother in a choking headlock . According to Jesse, appellant then pushed Heather "down in the glass and kicked her." Transcript at 182.
 {¶ 41} Ashland Police Officer Joel David Icenhour testified at trial that when he spoke with appellant after Heather filed a police report, appellant "stated that Heather was getting into his face and . . . admitted to pushing her" and to throwing the jewelry box and breaking the glass. Transcript at 164. Appellant, however, denied ever kicking Heather. The Police Officer testified that he did not find any marks or injuries on Heather.
 {¶ 42} During his testimony at trial, appellant did not deny that he had an argument with Heather on the day in question. Appellant testified that on the morning of July 22, 2002, Heather told him that she was having an affair and accused appellant of cheating on her. Appellant testified that he threw the jewelry box because "I was angry, upset because she pushed me so far" and testified that, at one point, Heather "was swearing in my face and I got a little upset, I just shoved her." Transcript at 216, 217. Appellant further testified that he did not try to push Heather down or to harm her and that he pushed her "[j]ust like not really hard, not enough to hurt somebody." Transcript at 218.
 {¶ 43} Kyle Cieslak, Heather's younger son, was called as a rebuttal witness after appellant testified. Kyle testified that appellant put his mother "in a headlock" and kicked her. Transcript at 248.
 {¶ 44} At the conclusion of the evidence and the end of deliberations, the jury, on October 4, 2002, found appellant guilty of domestic violence. The jury further found that appellant previously was convicted of domestic violence.[2] As memorialized in a Judgment Entry filed on November 22, 2002, the trial court sentenced appellant to nine months in prison.
 {¶ 45} It is from his conviction and sentence that appellant now appeals, raising the following assignments of error:
 {¶ 46} "I. Appellant's right to due process was violated by the ineffective assistance of trial counsel when trial counsel's performance fell far below a minimum standard of reasonable legal representation, in failing to fully present all proper challenges to the state's case and, to make proper objections at trial and other errors.
 {¶ 47} "II. Appellant's right to due process was violated because his judgment and conviction of domestic violence is unsupported by legally sufficient evidence and is contrary to the manifest weight of the evidence.
 {¶ 48} "III. Appellant was denied due process when the trial court allowed the state to introduce evidence of "other acts" claimed to have been committed by appellant.
 {¶ 49} "IV. Appellant was denied due process when the prosecutor to [sic] engaged in misconduct, infecting the trial of his criminal case, and witholding [sic] vital evidence, such that a fair trial was impossible."
 {¶ 50} For purposes of economy, we shall address appellant's assignments of error out of sequence.
 II {¶ 51} Appellant, in his second assignment of error, argues that his conviction for domestic violence is against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 52} In State v. Thompkins (1997), 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court explained the difference between sufficiency of the evidence and manifest weight. Sufficiency of the evidence refers to the legal standard the trial court applies in determining whether the State has presented sufficient evidence on each element of the crime charged to submit the matter to the jury. The court must determine whether, after viewing the evidence in a light most favorable to the prosecution any rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. Sufficiency of the evidence is evidence which, if believed would convince the average mind. Thompkins at 386, citations deleted. Once a trial court has determined that the evidence is sufficient, it submits the matter to the jury, which acts as the trier of fact.
 {¶ 53} Weight of the evidence refers to the amount of evidence presented to the jury on one side of an issue. On review for manifest weight, this court must review the entire record, and determine whether when it resolved conflicts in the evidence, the jury lost its way and created a manifest miscarriage of justice. The Supreme Court has directed us to order a new trial only in an exceptional case where the evidence weighs heavily against the conviction, Thompkins at 387. This court must defer to the trier of fact regarding the weight of evidence and credibility of witnesses because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility,State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 54} As is stated above, appellant was convicted of domestic violence in violation of R.C. 2919.25(A). Such section states, in relevant part, as follows: "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member. (D) Whoever violates this section is guilty of domestic violence. . . . If the offender previously has pleaded guilty to or been convicted of domestic violence, of a violation of a municipal ordinance that is substantially similar to domestic violence, . . . a violation of division (A) or (B) of this section is a felony of the fifth degree. . . ." R.C.2919.25(D).
 {¶ 55} From the facts as set forth in detail in the statement of facts, we find that any rational trier of fact could have found that appellant, who stipulated to a prior conviction of domestic violence, knowingly caused or attempted to cause physical harm to Heather, his wife. Appellant, while testifying at trial, himself admitted to shoving Heather during their argument, causing her to fall to the floor. While appellant contends that there was no evidence of actual physical harm, R.C. 2919.25(A) states that no person shall knowingly attempt to cause physical harm to a family or household member. Based on the fact that appellant placed Heather in a headlock and threw her down, the jury could find that he attempted to cause physical harm to her.
 {¶ 56} Furthermore, upon our review of the evidence, we cannot say that the jury, as trier of fact, lost its way in convicting appellant of domestic violence. Appellant, in his argument, contends that the children's testimony cannot be afforded any weight because their testimony is contradictory and further contends that, for such reason, "[e]ssentially the case boils down to the testimony of the alleged victim" and appellant. However, the jury, as trier of fact, clearly was in the best position to assess credibility. Clearly, the jury found Heather and her two sons to be credible witnesses.
 {¶ 57} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 58} Appellant, in his third assignment of error, argues that he was denied due process of law when the trial court allowed the State to introduce evidence of "other acts" allegedly committed by appellant. We disagree.
 {¶ 59} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 60} Evid. R. 404(A) generally provides for the exclusion of evidence as to a "persons' character or a trait of his character for the purpose of proving that he acted in conformity therewith on a particular occasion." In turn, Evid. R. 404(B) provides as follows: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 61} Evid. R. 404(B) is to be strictly construed against the State and the admissibility of "other acts" evidence. See State v. Broom
(1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. However, if the other acts "tend to show" by substantial proof any of those purposes enumerated in Evid. R. 404(B), such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then the evidence of the other acts is admissible for such limited purpose. Id.
 {¶ 62} Testimony was adduced at the trial in this matter that appellant was a suspicious, jealous man. The following is an excerpt from Heather Byer's trial testimony:
 {¶ 63} "Q. Is John Byers a suspicious man?
 {¶ 64} "A. What do you mean by that?
 {¶ 65} "Q. Does he suspect you of things?
 {¶ 66} "A. Yeah.
 {¶ 67} "Q. Is he jealous?
 {¶ 68} "A. To a certain extent.
 {¶ 69} "Q. What is he jealous about?
 {¶ 70} "A. Um, he would —" Transcript at 85-86.
Although defense counsel objected on the basis that the foregoing was improper character evidence, the trial court overruled such objection. Moreover, In the case sub judice, the trial court admitted evidence over objection that appellant was not paying child support, that appellant was in jail, and that appellant and Byers argued over issues of cheating and lying.[3] The following testimony was adduced when Heather Byers was asked during direct examination by the State what prompted her to file for divorce soon after July 22, 2002:
 {¶ 71} "A. We'd been fighting constantly over child support and money on income tax come back he wanted me to pay his child support and other issues of cheating and lying and that aspect.
 {¶ 72} "Q. Does, uh, John owe you support?
 {¶ 73} "A. No.
 {¶ 74} "Q. So he has another child?
 {¶ 75} "A. Yes.
 {¶ 76} "Q. Do you know, is he behind in that child support?
 {¶ 77} "A. Yes, he is.
 {¶ 78} "Q. Do you know how much?
 {¶ 79} "A. Hmm, I tally out it' over five grand Transcript at 83-84. Although defense counsel objected to such testimony on grounds of relevancy, the trial court overruled the objection. The trial court also admitted into evidence, over objection, the fact that appellant was in jail on work release as of July 22, 2002. During direct examination, Heather Byers, when asked whether appellant was working on such date, testified that "[h]e was on work release when he went to jail, he was working at Coburn." Transcript at 85. Defense counsel's objection to such testimony was overruled by the trial court.
 {¶ 80} We find evidence of appellant's failure to pay child support and his incarceration for the same, appellant's jealous nature, and the argument over issues of lying and cheating were admissible as "proof of motive" pursuant to Evid. R. 404(B). As is stated above, evidence was adduced at trial that appellant and Heather had been arguing about appellant's child support obligation for another child and his incarceration for failure to pay the same and over issues of lying and cheating. Evidence as also adduced that Heather voiced her displeasure during the argument over "child support [being] taken from my kids paying for his kids . . ." Transcript at 92. Testimony also was adduced that Heather told appellant that he had to get a job and pay child support and threatened appellant with divorce. Furthermore, testimony was also adduced at trial that, on the day in question, appellant, upon arriving at their apartment, checked the caller ID to determine who had called and the two began arguing over having people over. In short, all of the above "other acts" were admissible as proof of motive. Such evidence was not offered as proof of appellant's character, but rather to prove appellant's motive for assaulting Byers.
 {¶ 81} Appellant also contends that the trial court erred in allowing the State to introduce evidence that appellant had committed domestic violence against Heather Byers before. At trial, Heather testified that she decided to call the police after the incident in question "`cause it's not the first time John has laid a hand on me." Transcript at 100. As is stated above, although appellant has a prior domestic violence conviction, Heather Byers was not the victim in such case. After defense counsel objected to such testimony and requested a mistrial, arguing that "[t]hey brought in prior knowledge that he's been abusive to her", the trial court overruled the request for a mistrial and stated that it would give a limiting instruction instead. The trial court then instructed the jury that it was "not to consider any prior physical contact or physical violence between the two that may have been testified to. You're to disregard it, you're not to consider it in any way, whatsoever, . . ." Transcript at 101-102. Thus, the trial court implicitly sustained appellant's objection and gave a limiting instruction. While appellant appears to argue that the trial court should have granted a mistrial based on such testimony, we find that, based on the overwhelming evidence of appellant's guilt, based on the testimony of Heather Byers[4] and her two sons and appellant's admission to shoving Heather, and the limiting instruction given to the jury, any such error was not prejudicial.
 {¶ 82} Finally, appellant argues that the trial court erred in allowing the State to introduce evidence that appellant and Byers had argued in the past over appellant's drug use, that Byers had called the police on appellant before, and that, after the incident, Byers' children were forced to flee in their underwear. Appellant, in his brief, concedes that defense counsel failed to object to such testimony. "Absent plain error, an appellate court will not consider errors that the defendant failed to object to at the trial level." State v. Thompson (1998),127 Ohio App.3d 511, 522, 713 N.E.2d 456. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. In order to find plain error under Crim R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 83} We find that based on the overwhelming evidence of appellant's guilt, as set forth in detail in the statement of facts, the outcome of the trial would not have been different but for such alleged errors.
 {¶ 84} Based on the foregoing, appellant's third assignment of error is overruled
 IV {¶ 85} Appellant, in his fourth assignment of error, argues that he was denied due process of law due to prosecutorial misconduct. We disagree.
 {¶ 86} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial.Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144. A defendant's failure to object at trial to alleged prosecutorial misconduct waives all but plain error. State v. Braden, 98 Ohio St.3d 354,369, 2003-Ohio-1325, 785 N.E.2d 439. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91,372 N.E.2d 804. Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. State v. Nicholas (1993), 66 Ohio St.3d 431, 613 N.E.2d 225.
 {¶ 87} Appellant, in the case sub judice, takes issue with statements made by the prosecution during opening and closing arguments emphasizing that appellant was not credible since he previously "head-butted" his ex-wife and ended up in jail after failing to pay child support, that appellant has a past history "demonstrat[ing] a desire to avoid responsibility for his acts", and that appellant was suspicious and jealous. Transcript at 270, 273. Appellant specifically contends that "the record is replete in this case with improper conduct by the prosecution in opening and closing argument, including repeated continuous, pervasive reference to other uncharged misconduct intended to infect the jury and invite them to convict Mr. Byers upon disdain for his prior acts." However, since no objection was made to these statements at trial, a plain error analysis applies.
 {¶ 88} As is set forth in detail in the statement of facts above, Heather Byers and her two sons all testified at trial as to the incidents of July 22, 2002. In addition, Police Officer Icenhour testified that appellant admitted to pushing Heather and, at trial, appellant himself admitted that he shoved Heather, who was swearing in his face. Upon our review of the record, we find that based on the overwhelming evidence of appellant's guilt, as set forth in detail in the statement of facts, the outcome of the trial would not have been different but for the alleged error.
 {¶ 89} Appellant also argues that he was deprived of a fair trial based on the prosecutor's alleged withholding of exculpatory evidence. Appellant specifically contends that the prosecution deprived him of a fair trial by withholding the statement of Jesse Cieslak, Heather Byer's minor son.
 {¶ 90} In Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.Ed.2d 215, the United States Supreme Court held that the "[s]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To establish a violation, a defendant must prove that the prosecution failed to disclose evidence upon request, the evidence was favorable to the defense, and the evidence was material. State v.Garn, Richland App. No. 02CA45, 2003-Ohio-820, citing Moore v. Illinois
(1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.E.2d 706.
 {¶ 91} In the case sub judice, after Jesse Cieslak, Byer's son, testified, appellant's counsel requested an in camera review of the summary of the statement that Jesse Cieslak made during an interview to Lisa Followay, an investigator with the Prosecutor's Office, "to check for inconsistencies . . ." pursuant to Crim. R. 16(B)(1)(g). Appellant's counsel stated, in part, on the record as follows:
 {¶ 92} ". . . I'm asking the Court to review it. If it's a transcription of her [Followay] writing down what he [Jesse] said I believe it's proper for the Court to review it. I want to know if there's anything, they appeared to be surprised to me today by some of the things he said. I think it's fair for you to look at it. If it's her summary of what she thinks he said, that's not a problem, but if she wrote down what he said the Court should review that." Transcript at 187-188.
 {¶ 93} Crim.R. 16(B)(1) states, in relevant part, as follows: "(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 94} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies."
 {¶ 95} After reviewing a summary of the statement in camera,[5]
the trial court stated on the record as follows: "All right, the Court has reviewed the document entitled Memo and is concluding that is falls within the category of a summary of the conversations of the witness. It does not contain exact quotes under the case law cited by the State. It is not, therefore, proper for it to be used in Cross-Examination by Counsel for the Defendant." Transcript at 191. Based on the foregoing, we find that the prosecution did not withhold exculpatory evidence from appellant.[6]
 {¶ 96} Appellant's fourth assignment of error is, therefore, overruled.
 I {¶ 97} Appellant, in his first assignment of error, argues that he received ineffective assistance of trial counsel. Appellant specifically contends that trial counsel was ineffective in failing to file objections and motions to exclude "other act" evidence and in failing to object to prosecutorial misconduct.
 {¶ 98} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 99} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 100} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "* * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."Bradley at 143, 538 N.E.2d 373, quoting Strickland at 697. As such, we will direct our attention to the second prong of the Strickland test.
 {¶ 101} In appellant's third assignment of error, we concluded the trial court did not err when it allowed the State to introduce evidence of "other acts" claimed to have been committed by appellant and/or that the admission of such evidence was not prejudicial. In our analysis and disposition of appellant's fourth assignment of error, we held that appellant was not denied due process of law due to prosecutorial misconduct. Furthermore, given the overwhelming evidence of appellant's guilt, we conclude that appellant cannot establish that he was prejudiced by defense counsel's performance. In short, there is no evidence indicating the result of the trial was unreliable or the proceeding was fundamentally unfair as a result of defense counsel's failure to object to prosecutorial misconduct or to file objections and motions to exclude "other act" evidence.
 {¶ 102} Appellant's first assignment of error is, therefore, overruled.
 {¶ 103} Accordingly, the judgment of the Ashland County Court of Common Pleas is affirmed.
Wise, P.J., and Boggins, J., concur.
[1] Appellant was in jail on a different charge.
[2] The victim in such case was not Heather Byers.
[3] The two argued over appellant's affair with another woman.
[4] As is stated above, Heather Byers also testified that, upon her return to the apartment, she discovered a handwritten note and a message on the answering machine from appellant stating that he was sorry.
[5] Contrary to appellant's argument in his brief, the trial court did
conduct an in camera review of the summary of Jesse Cieslak's statement.
[6] We note that appellant does not assign as error the trial court's holding that the summary could not be used in cross-examination.